IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUKAS O. HOLLIS, B03076, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LATOYA HUGHES, )<br>DANIEL MONTI, )<br>CHASE WILHELM, )<br>)<br>Defendants. ) | Case No. 25-cv-747-DWD |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Lukas O. Hollis, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Centralia Correctional Center (Centralia), brings this civil rights action pursuant to 42 U.S.C. § 1983 and RLUIPA (Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), et al.) for alleged deprivations of his rights related to his religious exercise in prison. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are

to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff is a Wiccan-Druid, who seeks to possess a leatherbound Book of Shadows journal as part of his religious exercise. A Book of Shadows is a book that Wiccans use to keep personal thoughts and reflections. (Doc. 1 at 2). Plaintiff sought to purchase such a book from Amazon, and he explains although it is just a journal, the book he sought to purchase does still have an associated ISBN. Plaintiff explains that he believes possession of this book is allowed by reference to an excerpt of an Administrative Directive, which states that Wicca is an oral tradition and that practitioners "often have a personal notebook, listing their rituals and working notes called a "Book of Shadows."" (Doc. 1 at 10). The Directive goes on to state that IDOC inmates are permitted to have a Book of Shadows. (*Id.*). Plaintiff states that the book is part of the way he expresses himself, and that recording thoughts in the journal is a "religious exercise."

Plaintiff explains by way of background that in 2022 Defendant Chase Wilhelm (Chief Chaplain) and Rob Jeffreys (former director of IDOC) allowed him to receive a copy of this book. By contrast, when he attempted to receive a new copy of the Book of Shadows at Centralia, he was informed that he could not possess it because it was leatherbound. He supplied two correspondence slips from the Chaplain explaining that he cannot have the book because it is leatherbound. (Doc. 1 at 9). By contrast, it was explained that inmates are allowed a leatherbound book that contains writing like a Bible or Koran. Plaintiff also attached a grievance concerning the issue wherein the grievance

officer indicated that leatherbound books are not allowed, but that Plaintiff was offered and accepted a composition notebook. (Doc. 1 at 7).

Plaintiff argues in his complaint that the Administrative Directives have not changed, and he should still be allowed to receive this book. He faults Defendant Hughes for concurring on the grievance denying the book, because she "concurred" without observing the rules that govern the grievance. (Doc. 1 at 3). Plaintiff also alleges that allowing others who practice religions to have leatherbound books, while disallowing the Wiccan book, is clear discrimination. He claims that the prison relies on "safety" to excuse the offering of a composition book versus a leatherbound journal, which he claims is unfair given that the book has an ISBN number and can be delivered like other publications.

As relief, Plaintiff seeks to be provided with the leatherbound Ancient Earth Scrolls book that he wishes to use as his Book of Shadows, he seeks punitive damages, and he seeks that any Pagan in IDOC who requests the book be provided with the book. (Doc. 1 at 4).

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** **First Amendment or RLUIPA claim against Defendants Hughes, Monti and Wilhelm for denying Plaintiff access to a leatherbound Book of Shadows from 2024-present;**
>
> **Claim 2:** **Fourteenth Amendment Equal Protection claim against Defendants Hughes, Monti, and Wilhelm for denying Plaintiff's leatherbound book while allowing inmates of other religious denominations to possess leatherbound books.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

As an initial matter, Plaintiff has expressed a desire to name Defendants Hughes, Monti and Wilhelm solely in their official capacities. (Doc. 1 at 3). This is appropriate to the extent that the sole form of relief that he seeks is injunctive relief, because state actors implement injunctive relief in their official capacities. However, Plaintiff also seeks money damages. An inmate cannot secure money damages from a prison official in his or her official capacity, because that is akin to a suit directly against the state for money damages, which is not allowed. *See e.g.*, *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (a citizen cannot sue a state or a state official in their official capacity for money damages). Thus, to the extent that Plaintiff seeks money damages, his complaint is not adequately pled.

Turning to the possible grounds for injunctive relief, an inmate's right to practice his religion is protected under the First Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's

religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also* *Cutter v. Wilkinson*, 544 U.S. 709 (2005). However, RLUIPA does not allow money damages against state officials, and instead allows for only injunctive relief. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Here, Plaintiff alleges that his rights under RLUIPA have been violated because the prison will not allow him to receive a leatherbound journal to be used as his Book of Shadows. He contends that the leather bound version of the journal is central to his religious practice. Ultimately a more detailed assessment will be needed of the necessity of this leatherbound book as compared to other journals like the composition book the prison provided, and an assessment will be needed of if the government has a compelling interest to impose this particular restriction. At this preliminary juncture, the allegations are sufficient to proceed.

Likewise, Plaintiff may proceed on his Fourteenth Amendment Equal Protection claim against the prison officials to the extent that he seeks injunctive relief. Plaintiff argues that inmates of other denominations are allowed to possess leatherbound books, while he is not being allowed to possess his leatherbound Book of Shadows. The Equal Protection Clause and the Establishment Clause prohibit the defendant from treating members of some religious faiths more favorably than others without a secular reason. *See Cruz v. Beto*, 405 U.S. 319, 322-23 (1972); *Nelson v. Miller*, 570 F.3d 868, 880-82 (7th Cir. 2009); *Kaufman v. McCaughtry*, 419 F.3d 678, 683-84 (7th Cir. 2005). "The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree

as the rights of those belonging to larger and more traditional denominations." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). To state an equal protection claim, a plaintiff must allege that he was treated differently from others based on membership in a suspect class (such as race, gender, alien status, or national origin) or based upon the denial of a fundamental right (freedom of speech or religion). *See, e.g., Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Here, Plaintiff clearly meets the basic standards to demonstrate differential treatment from religious groups, so he may also proceed on his Fourteenth Amendment claim solely as it relates to potential injunctive relief.

For now, Plaintiff may proceed against all three defendants in their official capacities because it is not clear if who amongst Hughes, Monti, or Wilhelm will be the best party to implement the injunctive relief sought. The Defendants may seek to clarify this issue and to narrow it to just one defendant as they see fit. *See e.g., Clay v. Indiana Dept. of Corr.*, 2020 WL 3791595 at *2 (N.D. Ind. July 7, 2020) (allowing an inmate to proceed on a RLUIPA claim against a Warden and dismissing all other defendants).

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint survive initial screening as described above against Defendants Hughes, Monti, and Wilhelm in their official capacities only. By contrast, any claim for monetary damages is dismissed because Plaintiff cannot seek monetary damages from a state official in their official capacity. Plaintiff's Motion for Service (Doc. 3) is **GRANTED**.

The Clerk of Court is **DIRECTED** to prepare for Defendants Latoya Hughes, Daniel Monti, and Chase Wilhelm: (1) Form 5 (Notice of a Lawsuit and Request to Waive

Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and a copy of this Order. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. [Fed. R. Civ. P. 41(b)](#).

**IT IS SO ORDERED.**

Dated: June 30, 2025                                         /s *David W. Dugan*
                                                            _____
                                                            DAVID W. DUGAN
                                                            United States District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged

actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.